UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HARRIS CORPORATION,**

                **Plaintiff,**

**v.**                                                    **Case No:  6:11-cv-618-Orl-41KRS**

**RUCKUS WIRELESS, INC.,**

                **Defendant.**

_____/

## ORDER

THIS CAUSE is before the Court on the following motions: Defendant Ruckus Wireless, Inc.'s ("Ruckus") *Daubert* Motion to Exclude the Testimony and Opinions of Dr. Nisha Marie Mody, Ph.D. (the "Ruckus *Daubert* Motion," Doc. 199) and Plaintiff Harris Corporation's ("Harris") Motion to Exclude Unproduced Documents Pursuant to Rule 37(c)(1) and to Exclude the Amended Expert Report of Richard J. Ostiller (the "Harris Motion to Exclude," Doc. 205). For the reasons set forth below, the Court will defer ruling on the Ruckus *Daubert* Motion, and the Harris Motion to Exclude will be granted.

## I.    BACKGROUND

This case concerns the alleged infringement of two patents: U.S. Patent No. 6,504,515 (the "'515 Patent," Doc. 13-1) and U.S. Patent No. 7,916,684 (the "'684 Patent," Doc. 13-2) (collectively, the "Patents-in-Suit"). Harris initiated this case on April 15, 2011, and filed an Amended Complaint (Doc. 13) on May 23, 2011, wherein Harris alleges that "Ruckus has sold products and performed methods that infringe directly, by inducement and/or contributorily, one or more claims of the [Patents-in-Suit]." (*Id.* at 3, 4). Moreover, Harris alleges that "Ruckus has

infringed and is still infringing one or more claims of the [Patents-in-Suit] by making, selling and using products that embody Harris'[s] patented invention." (*Id.*).

As relevant, the original Case Management and Scheduling Order (the "2011 CMSO," Doc. 28) provided for the following deadlines: (1) mandatory initial disclosures due July 29, 2011; (2) burden-of-proof expert reports due on March 5, 2012; (3) rebuttal expert reports due April 6, 2012; (4) discovery deadline of May 4, 2012; and (5) all dispositive, *Daubert*, and *Markman* motions due June 1, 2012.[1] In accordance with those deadlines, Harris identified Dr. Nisha Marie Mody, Ph.D. ("Dr. Mody") as its expert with regard to damages and submitted a corresponding expert report (the "2012 Mody Expert Report"). (Ruckus *Daubert* Mot. at 3). Therein, Dr. Mody employed an "income-based methodology to arrive at a reasonabl[e] royalty for Ruckus'[s] [purported] patent infringement." (Harris Mot. Exclude at 3). In rebuttal, Ruckus timely identified Richard J. Ostiller ("Mr. Ostiller") as its expert with regard to damages and submitted a corresponding rebuttal expert report (the "2012 Ostiller Expert Report"). (*Id.*). Therein, Mr. Ostiller challenges Dr. Mody's methodology and offers "an alternative damages theory that utilizes a market-based methodology." (*Id.*).

After proceeding through claim construction, (*see* Doc. 121), summary judgment, (*see* Doc. 125), and *Daubert* motions, (*see* Doc. Nos. 123–24),[2] the case was stayed on February 21, 2013, pending reexamination of the '684 Patent by the United States Patent and Trademark Office, (*see* Feb. 21, 2013 Order, Doc. 132; *see also* Mar. 29, 2013 Order, Doc. 138, at 3 (affirming the

---

[1] It seems that the dispositive motion deadline was amended to April 4, 2013, (Am. CMSO, Doc. 87, at 2), but at the parties' prompting, the amended deadline was abandoned, in lieu of the original deadline, (*see* Joint Mot. Clarify Am. CMSO, Doc. 92, at 2–3; Second Am. CMSO, Doc. 100, at 2).

[2] Harris previously filed a Motion to Strike the Expert Report and Exclude Testimony of Richard J. Ostiller (Doc. 65). That motion was denied. (*See* Doc. 123). Ruckus did not previously file a *Daubert* motion with regard to Dr. Mody.

prior decision to stay)). To date, Ruckus has requested reexamination of the '684 Patent four times. Of those requests, the most recent, filed under Control Number 90/013,324, has been granted and remains pending before the PTO. (*See* Aug. 28, 2014 Notice Pendency, Doc. 144, at 2; *Markman* Hr'g Tr., Feb. 4, 2015, Doc. 187, at 32:19–21). Also, Ruckus has requested reexamination of the '515 Patent two times, the most recent of which, filed under Control Number 90/013,289, has resulted in amendments to the '515 Patent. (*See* Aug. 28, 2014 Notice Pendency at 1–2; Telephonic Hr'g Tr., May 26, 2015, Doc. 247, at 8:15–22).

During the course of the stay, the case was transferred to the undersigned from United States District Judge Charlene E. Honeywell. (*See* Doc. 142). Thereafter, the stay was lifted. (Oct. 2, 2014 Order, Doc. 145, at 7). In doing so, this Court instructed the parties to file a new Case Management Report ("CMR"). (*Id.*). Initially, the parties failed to agree on proposed deadlines, and on November 17, 2014, the parties submitted a CMR (Doc. 165), in which each party outlined their respective proposals. As a result, the Court held a November 25, 2014 Telephonic Hearing and encouraged the parties to file an amended CMR, which included agreed-upon deadlines. (*See* Minute Entry, Doc. 168; Telephonic Conference Tr., Nov. 25, 2014, Doc. 173, at 8:2–25). Importantly, during that hearing, the Court instructed that it was "not willing to go and rehear matters that have already been determined by Judge Honeywell." (Telephonic Conference Tr., Nov. 25, 2014, at 9:2–3). The Court continued, "So if [Ruckus] w[as] to file any motions for summary judgment, et cetera, that delve into matters already resolved, I fully expect [Harris] to move to either strike or to . . . ask the Court to deny relief on those matters that have already been determined by Judge Honeywell." (*Id.* at 9:6–10). Moreover, Counsel for Ruckus represented that the purpose of any new proceeding was "not to redo" prior proceedings; rather, the sole purpose was to address issues that arose during reexamination. (*Id.* at 6:16–17; *see also id.* at 7:2–4).

Subsequently, the parties submitted the Amended CMR (Doc. 171), which includes agreed-upon dates. In pertinent part, the parties set the following deadlines:

| DEADLINE OR EVENT | STIPULATED PROPOSED DATE |
|---|---|
| Parties to exchange amended infringement/invalidity contentions as follows:<br><br>(1) Ruckus' amended invalidity contentions to address:<br><br>a. construction of the disputed claim term ("simultaneous/ simultaneously") of the '684 Patent; and<br><br>b. issues raised in the reexaminations of both the '515 and '684 patents.<br><br>(2) Harris' infringement contentions based on the Court's January 4, 2013 Claim Construction Order (Doc. 121) and the construction of the disputed claim term ("simultaneous/simultaneously") of the '684 Patent. | **March 6, 2015** |
| Parties to exchange amended burden-of-proof expert reports to address:<br><br>(1) the Court's January 4, 2013 Claim Construction Order (Doc. 121) and construction of the disputed claim term ("simultaneous/ simultaneously") of the '684 Patent;<br><br>(2) issues raised in the re-examinations of both the '515 and '684 Patents; and<br><br>(3) damages based on updated sales information and new case law. | **March 6, 2015** |
| Parties to exchange rebuttal expert reports to amended expert reports | **April 3, 2015** |
| Expert discovery regarding amended expert reports closes | **April 10, 2015** |

The corresponding Case Management and Scheduling Order (the "2015 CMSO," Doc. 176) adopts the agreed-upon dates.

Thereafter, the parties proceeded through limited claim construction, and in the March 2, 2015 Order on claim construction (Doc. 190), the Court admonished that, upon lifting the prior stay, "[t]he parties were barred from re-litigating issues that could have been addressed prior to the stay; however, the parties were permitted, through claim[] construction, *Daubert* motions, and dispositive motions, to address any changes to both the '515 and '684 Patents that arose during reexamination." (*Id.* at 2 (citing 2015 CMSO; Telephonic Conference Tr., Nov. 25, 2014, at 9:1–12)). In fact, a primary reason for rejecting Ruckus's "sets of frequencies" construction was that "Ruckus's construction improperly attempts to re-litigate issues that should have been previously addressed." (*Id.* at 12 ("First and foremost, the present claim construction is limited to issues raised during reexamination, and the terms added during the reexaminations, i.e., 'simultaneous' and 'simultaneously,' are unrelated to the frequency distinction.").

Following claim construction, in accordance with the 2015 CMSO, Harris served a supplemental report of Dr. Mody (the "2015 Mody Supplemental Expert Report") which purportedly accounts for damages that "accrued during the stay." (Harris Mot. Exclude at 5). According to Harris, "Dr. Mody's analysis and methodology for arriving at a reasonable royalty remained unchanged from the initial report served in 2012." (*Id.* at 17).

Subsequently, on April 3, 2015, Ruckus served Mr. Ostiller's amended expert report (the "2015 Ostiller Amended Expert Report"), which employs an income-based methodology for calculating damages, as compared to the market-based methodology that was employed in the original, 2012 Ostiller Expert Report. (*Id.* at 5). According to Harris, the 2015 Ostiller Amended Expert Report "includes entirely new criticisms of Dr. Mody's analysis that could have been contained in the original report[] and sets forth an entirely new alternative damages theory." (*Id.*). Moreover, Mr. Ostiller's amended report relies on documents—the costed bills of materials (the

"Costed BOM's")—that were not previously produced. (*Id.* at 5, 10). Ruckus describes the Costed

BOM's as "the list of every component in the accused WiFi access points and their prices." (Resp.

to Harris Mot. Exclude, Doc. 222, at 1). Upon Harris's request, Ruckus produced the Costed

BOM's in PDF format on April 8, 2015, which was the day before the scheduled deposition of Mr.

Ostiller. (Harris Mot. Exclude at 6–7). On May 22, 2015, the documents were produced in their

native Excel format, including metadata. (Telephonic Hr'g Tr., May 26, 2015, at 16:2–7).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(a)(1)(A), among other things, a party must

disclose and provide to the opposing party "(i) the name . . . of each individual likely to have

discoverable information . . . that the disclosing party may use to support its claims or

defenses[;] . . . (ii) a copy . . . of all documents, electronically stored information, and tangible

things that the disclosing party . . . may use to support its claims or defenses." Such disclosures

must be made within the time set by court order. Fed. R. Civ. P. 26(a)(1)(C); *see also* M.D. Fla.

R. 3.05(d). Additionally, "a party must disclose to the other parties the identity of any witness it

may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R.

Civ. P. 26(a)(2)(A). "[T]his disclosure must be accompanied by a *written report*—prepared and

signed by the witness—if the witness is one retained or specially employed to provide expert

testimony in the case." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Such disclosures must be

made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Rule 26(e) imparts an on-going obligation to timely "supplement or correct" disclosures if

the disclosing party "learns that in some material respect the disclosure or response is incomplete

or incorrect, and if the additional or corrective information has not otherwise been made known to

the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1). Such supplementation

must occur within the time limits "ordered by the court." *Id.*

Under Rule 16(b), district courts are required to issue scheduling orders, the content of

which may include deadlines for disclosures under Rules 26(a) and (e). In that sense, a Rule 16(b)

scheduling order embodies the Rule 26 deadlines. As to modification, a "schedule may be modified

only for *good cause* and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added).

"This good cause standard precludes modification unless the schedule cannot 'be met despite the

diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418

(11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note, 1983 amend.).

### III.   DISCUSSION

Broadly speaking, Ruckus seeks exclusion of Dr. Mody's testimony, and Harris seeks

exclusion of the Costed BOM's and Mr. Ostiller's supplemental testimony. The Court will begin

with Harris's arguments.

### A.   Harris Motion To Exclude

By way of the Harris Motion to Exclude, Harris argues that the 2015 Ostiller Amended

Expert Report should be stricken because such disclosure was not permitted by the 2015 CMSO

and therefore violates the original, 2011 CMSO. Moreover, Harris argues that the Costed BOM's

should be excluded because those documents were not timely produced.

### 1.   The 2015 Ostiller Amended Expert Report

The deadline for submitting rebuttal expert reports was April 6, 2012. After this case was

reopened in October 2014, the Court set deadlines for amended burden-of-proof expert reports,

which were limited to Judge Honeywell's pre-stay claim construction, issues raised during

reexamination, and "damages based on updated sales information and new case law." (2015

CMSO at 1–2 (adopting the Amended CMR); Am. CMR at 3). In conjunction, the Court permitted the exchange of rebuttal reports to the amended burden-of-proof expert reports. (2015 CMSO at 1).

Ruckus argues that the 2015 Ostiller Amended Expert Report was permitted under the 2015 CMSO because it is based on new case law. As an initial matter, in the parties' Amended CMR, the reference to "new case law," while included with regard to burden-of-proof expert reports, is noticeably absent from the section on rebuttal expert reports. (Am. CMR at 3). Even assuming that the 2015 CMSO permits Ruckus to unilaterally address new case law in its rebuttal to Dr. Mody's unchanged report, the content of the case law upon which Ruckus relies is not "new."

Generally, Ruckus points to three recent decisions from the Federal Circuit for the proposition that patent royalty damages, regarding infringement by a multi-component product, must be apportioned between the patented and un-patented components and that such royalties must be based on the "smallest salable unit." (Resp. to Harris Mot. Exclude at 4–6). Ruckus first relies on *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012). To begin, *LaserDynamics* was decided on August 30, 2012. *Id.* at 51. By that point in 2012, the pre-stay trial date for this case was over ten months away, and while the deadlines for discovery and dispositive motions had passed, various other deadlines remained pending. (*See* Am. CMSO, Doc. 87, at 2; Second Am. CMSO, Doc. 100, at 2). Ruckus's failure to raise the issue prior to the February 2013 stay belies the significance to which it presently assigns *LaserDynamics*.

Substantively, the *LaserDynamics* panel affirmed the "general rule" that "it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *LaserDynamics*, 694 F.3d at 67 (quoting *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283, 287–88 (N.D.N.Y. 2009)). The panel also affirmed that,

as a "narrow exception" to the general rule, the "entire market value rule" permits an award of "damages as a percentage of revenues or profits attributable to the entire product" only where the patentee can show "that the patented feature drives the demand for an entire multi-component product." *Id.* By definition, the "general rule" is not new. To the extent that Ruckus relies on *LaserDynamics* for its pronouncement of the entire market value rule, that rule is not new. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (a pre-*LaserDynamics*, Federal Circuit case discussing the origins of the entire market value rule); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (stating that "our law on the entire market value rule is quite clear"). To the extent that the "smallest salable unit" language is new to the Federal Circuit, there is no indication that such language presents a rule in itself; rather, that language merely comprises a mechanism to employ the fundamental rule of apportionment, which is far from new. *See LaserDynamics*, 694 F.3d at 67 (citing *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see also* Steven M. Amundson, *Apportionment and the Entire Market Value Rule Have Presented Problems in Practice when Determining the Value of a Patented Invention*, 23 Tex. Intell. Prop. L.J. 1, 4 (2014) (noting that the apportionment "problem has existed for some time").

Next, Ruckus relies on *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014). Therein, the Federal Circuit expounded upon the smallest salable unit approach to apportionment and held that "the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is *simply a step* toward meeting the requirement of apportionment." *Id.* at 1327 (emphasis added). Thus, "[w]here the smallest salable unit is, in fact, a multi-component product containing several non-infringing features . . . the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology." *Id.* That holding,

while placing additional emphasis on the smallest salable unit language, confirms that using such a royalty base is the means to the end. The end is apportionment, which remains the test.

Lastly, Ruckus relies on *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014). Therein, the Federal Circuit affirmed that "where the entire value of a machine as a marketable article is 'properly and legally attributable to the patented feature,' the damages owed to the patentee may be calculated by reference to that value." *Id.* at 1227. "Where it is not, however, courts must insist on a more realistic starting point for the royalty calculations by juries—often, the smallest salable unit and, at times, even less." *Id.* That holding adds nothing to the mix; apportionment remains the requirement. *See In re Innovatio IP Ventures, LLC Patent Litig.*, No. 11-cv-9308, 2013 WL 5593609, at *14 (N.D. Ill. Oct. 3, 2013) ("The requirement that a patentee apportion his damages in every case to the value of the patented features is well over a century old.").

Thus, the relevant import of neither *LaserDynamics*, *VirnetX*, nor *Ericsson* is sufficiently "new," and for that reason, those cases do not provide a basis for submitting a new rebuttal expert report. In 2012, nothing inhibited Ruckus from challenging Dr. Mody's purported failure to apportion damages. Ruckus's unwary attempt to liberally construe Federal Circuit case law as a means to revisit Dr. Mody's damages methodology is misguided. As noted, Ruckus previously ensured that its goal was "not to redo" prior proceedings; Ruckus has not been true to its word.

The content of the 2015 Ostiller Amended Expert report falls outside the bounds of the 2015 CMSO. Thus, the deadlines within the 2011 CMSO control, and the 2015 Ostiller Amended Expert Report was served well after the April 6, 2012 rebuttal deadline. As a result, Ruckus violated the 2011 CMSO. To the extent that the previously-discussed cases are relevant to show "good cause" for retroactively amending the April 6, 2012 deadline, Ruckus has failed to make

the requisite showing. As just explained, those cases do not alter the apportionment requirement; at best, they clarify it. Ruckus has otherwise failed to diligently seek modification of that deadline.

2.    *The Costed Bills of Materials*

Ruckus argues that the Costed BOM's were timely produced under the 2015 CMSO. In this case, the general discovery deadline was May 4, 2012. After this case was reopened in October 2014, the Court set a deadline for limited discovery as to amended expert reports. (2015 CMSO at 2; Am. CMR at 3). Importantly, general discovery was not reopened. As noted, the 2015 Ostiller Amended Expert Report was not permitted by the 2015 CMSO, and therefore, the Costed BOM's, which were produced to support the amended testimony, are also not permitted by the 2015 CMSO. As a result, the production of the Costed BOM's falls outside the limited discovery permitted by the 2015 CMSO.

Thus, the deadlines within the 2011 CMSO control. The Costed BOM's were served in PDF format on April 8, 2015, and in Excel format with metadata on May 22, 2015. Both productions were well after the May 4, 2012 general discovery deadline. Accordingly, Ruckus violated the 2011 CMSO. To the extent Ruckus—in order to show "good cause" to modify the May 4, 2012 deadline—attempts to tie the necessity of the Costed BOM's to the previously-discussed case law, those cases, as discussed, do not change the underlying apportionment requirement. Ruckus has otherwise failed to show diligence in seeking modification of the general discovery deadline.

3.    *Sanctions*

By untimely serving the 2015 Ostiller Amended Expert Report and untimely producing the Costed BOM's, Ruckus has effectively violated both the 2011 CMSO and Rule 26. *See Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 309–10 (M.D.N.C. 2002) (noting that the untimely

disclosure of an expert report violates both the scheduling order and the Rule 26 disclosure requirements). Rule 16(f) governs sanctions for violating scheduling orders and provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Rule 37(b)(2)(A) lists available sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from *introducing designated matters in evidence*." (emphasis added). A number of factors guide the formulation of Rule 16(f) sanctions for untimely expert disclosure: "(1) the explanation for the failure to obey the order; (2) the importance of the expert opinion; (3) the prejudice to the opposing party by allowing the disclosures; . . . (4) the availability of alternative or lesser sanctions"; (5) "the interest in expeditious resolution of litigation"; (6) "a court's need to manage its docket"; and (7) "public policy favoring disposition of cases on the merits." *Akeva*, 212 F.R.D. at 311.

In contrast, Rule 37(c)(1) governs sanctions for failing "to provide information or identify a witness as required by Rule 26(a) or (e)" and precludes a late-disclosing party from using "that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified* or is *harmless*." (emphasis added). By its language, Rule 37(c)(1) is self-executing. "In determining whether the failure to disclose was justified or harmless, [the Eleventh Circuit] consider[s] the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)).

Under either the Rule 16(f) or 37(c) inquiries, the 2015 Ostiller Amended Expert Report will be stricken, and the Costed BOM's will be excluded. As to the 2015 Ostiller Amended Expert

Report, Ruckus attempts to tie its untimely service to intervening case law. As noted, that justification is unconvincing; apportionment was and is the underlying rule. Even if *LaserDynamic*'s "smallest salable unit" language was particularly illuminating, Ruckus had ample opportunity to address the issue prior to the 2013 stay. Ruckus has failed to account for these discrepancies. *See Halaoui v. Renaissance Hotel Operating Co.*, No. 6:13-cv-1839-Orl-40TBS, 2014 WL 6801807 at * 2 (M.D. Fla. Dec. 2, 2014) (citing cases and noting that the late-disclosing party bears the burden of showing substantial justification or harmlessness). Additionally, Ruckus can still rely on the 2012 Ostiller Expert Report, the methodology of which, according to Mr. Ostiller, remains valid. (Ostiller Dep. Tr., Ex. 9 to Harris Mot. Exclude, Doc. 205-9, at 454:1–3). Ruckus has otherwise failed to demonstrate the importance of the 2015 Ostiller Amended Expert Report. Lastly, while Harris has deposed Mr. Ostiller regarding the 2015 Ostiller Amended Expert Report, Harris has otherwise lost the benefit of post-disclosure discovery. In fact, the 2015 Ostiller Expert Report was served just seven days before the limited discovery deadline closed. Had Ruckus submitted the report in conjunction with the deadlines in the 2011 CMSO, Harris would have had an entire month to conduct post-disclosure discovery. To permit Ruckus's untimely service would harm Harris, who has otherwise acted diligently. Therefore, under Rule 16(f), the 2015 Ostiller Amended Expert Report will be stricken, and under Rule 37(c), because Ruckus has failed to show substantial justification or harmlessness, the report must be stricken.

As to the Costed BOM's, Ruckus seems ignorant to the fact that its production of the Costed BOM's is exceptionally untimely. Ruckus's rationale—that the Costed BOM's only became necessary in light of intervening case law—is without merit for the reasons stated above. The Costed BOM's, the significance of which was linked to the now-stricken 2015 Ostiller Amended Expert Report, are also unimportant for those same reasons. Lastly, if the Costed BOM's

were permitted, Harris would effectively be precluded from engaging in related discovery, which it would have otherwise had the opportunity to pursue. Accordingly, at least at this point, the exclusion of the Costed BOM's is permitted under Rule 16(f) and mandated by Rule 37(c). In sum, the 2015 Ostiller Amended Expert Report will be stricken, and the Costed BOM's will be excluded.

To be clear, Ruckus's untimely service of the 2015 Ostiller Amended Expert Report and untimely production of the Costed BOM's reeks of sandbagging. Such conduct tends to support two conclusions: either Ruckus grossly misinterpreted the clear import of this Court's scheduling orders or Ruckus has knowingly taken liberties with its interpretations. In the case of the former, this Court's admonitions, as well as Harris's conduct, should have alerted Ruckus of its misinterpretation. Either conclusion is disconcerting.

### B.    Ruckus *Daubert* Motion

By way of the Ruckus *Daubert* Motion, Ruckus argues that Dr. Mody's testimony should be excluded. The deadline for submitting *Daubert* motions was June 1, 2012. After this case was reopened in October 2014, the parties were permitted to file "*Daubert* motions to address amended expert reports." (Am. CMR at 3). Dr. Mody timely served the 2015 Mody Supplemental Expert Report, which accounts for updated sales figures and which, in accordance with this Court's instructions, does not substantively alter the methodology contained in the 2012 Mody Expert Report. The Ruckus *Daubert* Motion contests Dr. Mody's methodology, thereby effectively challenging the 2012 Mody Expert Report. For that reason, the Ruckus *Daubert* Motion was not authorized by the 2015 CMSO.

To the extent Ruckus argues that the motion was permitted to address new case law, Ruckus misses the point. The 2015 CMSO summarily adopted the parties' Amended CMR. The latter

provides for amended expert reports based on new case law and for *Daubert* motions to address those amended expert reports. The 2015 Mody Supplemental Expert Report does not substantively change its methodology based on new case law. It follows that Ruckus's corresponding *Daubert* motion cannot spontaneously challenge Dr. Mody's methodology. Even assuming that the 2015 CMSO permitted a substantive attack on Dr. Mody's unchanged methodology based on new case law, the case law offered by Ruckus, which was previously discussed, is not sufficiently novel.

In sum, the Ruckus *Daubert* Motion falls outside of the bounds of the 2015 CMSO. As a result, the June 1, 2012 deadline in the 2011 CMSO controls, and Ruckus's motion was filed well after that deadline. Thus, Ruckus violated the 2011 CMSO.

As noted, Rule 16(f) outlines sanctions for violating scheduling orders. That Rule permits "any just orders," as well as requires the noncompliant party to "pay the reasonable expenses— including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was *substantially justified* or other circumstances make an award of expenses unjust." (emphasis added). "Rule 16(f) sanctions were 'designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation.'" *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003) (quoting *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)). "[D]istrict courts have discretion to decide if there is a pattern of delay or a deliberate refusal to comply with court orders or directions that justifies a sanction." *Id.*

Here, Ruckus attempted to manipulate the 2015 CMSO so as to allow the reconsideration of issues that Ruckus previously overlooked. That type of maneuvering bespeaks a level of underhandedness that has no place on the eve of trial or at any other time. Indeed, the Court is weary of Ruckus's cavalier tactic of liberally interpreting Court Orders then pursuing post hoc

justification grounded in fairness. Moreover, since this case was transferred to the undersigned, Ruckus has exhibited a pattern of delay that remains unfettered. (*See* Oct. 2, 2014 Order at 1–3 (noting that, despite the case being stayed only as to one reexamination, Ruckus filed repeated reexamination requests); Nov. 17, 2014 CMR at 15 (requesting a thirteen-month delay in trial after the stay was lifted); Mot. Reconsideration, Doc. 224, at 10 (seeking a continuance in the alternative to denying attorney withdrawal)).

Accordingly, while the Ruckus *Daubert* Motion will not be stricken, Ruckus will be otherwise sanctioned. Particularly, Ruckus will be required to pay Harris's expenses associated with responding to Ruckus's untimely *Daubert* motion. Moreover, Harris will be permitted to address this issue either: (1) by substantively responding to the Ruckus *Daubert* Motion via a Sur-Reply to Ruckus's Reply (Doc. 230), *see Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1329 (11th Cir. 2014) ("The proponent of the expert opinion must carry the burden of establishing qualification, reliability, and helpfulness."), or (2) by filing a new expert report as to damages.[3] Should Harris choose the latter option, Ruckus will be afforded a limited opportunity to rebut that new report.[4]

---

[3] The latter option, which allows Dr. Mody to alter her methodology, comports with Ruckus's purported interpretation of the 2015 CMSO and certainly cannot be the source of complaint by Ruckus. Indeed, this option would place Harris on the same footing as if it had misinterpreted the 2015 CMSO in the same manner as Ruckus.

[4] In the event that Harris incorporates the Costed BOM's into a new damages report, the Costed BOM's will no longer be excluded, as their untimely production will then be substantially justified.

**IV.    CONCLUSION**

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.  Harris's Motion to Exclude Unproduced Documents Pursuant to Rule 37(c)(1) and
    to Exclude the Amended Expert Report of Richard J. Ostiller (Doc. 205) is
    **GRANTED**.

    a.  The 2015 Ostiller Amended Expert Report (Doc. 205-12) is stricken.

    b.  The Costed BOM's are excluded.

2.  The Court defers ruling on Ruckus's *Daubert* Motion to Exclude the Testimony
    and Opinions of Dr. Nisha Marie Mody, Ph.D. (Doc. 199). Harris may either:

    a.  File a Sur-reply, not to exceed twenty pages, to Ruckus's Reply to its
        *Daubert* motion (Doc. 230), **on or before June 22, 2015**; or

    b.  Notify this Court of Harris's intent to serve a new expert report on damages,
        **on or before June 17, 2015**.

3.  Ruckus shall pay monetary sanctions to Harris in the amount of Harris's reasonable
    expenses incurred in responding to Ruckus's untimely *Daubert* motion.
    Immediately following the entry of this Court's future Order on Ruckus's *Daubert*
    motion, the parties shall engage in a good faith conference to resolve the amount of
    such expenses. If the parties are unable to reach an agreement, then Harris shall file
    an appropriate motion to quantify such expenses **within twenty-one days of entry
    of the Order on Ruckus's *Daubert* motion**.

**DONE** and **ORDERED** in Orlando, Florida on June 12, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record