UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HARRIS CORPORATION,**

**Plaintiff,**

v.                                                                **Case No:  6:11-cv-618-Orl-41KRS**

**RUCKUS WIRELESS, INC.,**

**Defendant.**

_____/

**ORDER**

THIS CAUSE is before the Court on the following motions: Plaintiff Harris Corporation's ("Harris") Motion to Exclude Ruckus's Invalidity Expert Opinions of Dr. Acampora (the "First Motion to Strike," Doc. 193), to which Defendant Ruckus Wireless, Inc. ("Ruckus") responded, (*see* Doc. 202); Harris's *Daubert* Motion to Exclude the Expert Reports of Dr. Anthony Acampora Regarding U.S. Patent No. 6,504,515 (the "Harris *Daubert* Motion," Doc. 201), to which Ruckus responded, (*see* Doc. 212); Harris's Motion to Exclude Ruckus's Non-Infringement Expert Opinions of Dr. Acampora (the "Second Motion to Strike," Doc. 204), to which Ruckus responded, (*see* Doc. 223); and Ruckus's Motion to Substitute Expert Witness (the "Motion to Substitute," Doc. 250), to which Harris responded, (*see* Doc. 255). The primary issue raised by these motions concerns the exclusion of Ruckus's purported expert witness—Dr. Anthony S. Acampora ("Dr. Acampora"). For the reasons set forth below, Dr. Acampora's testimony will be excluded.

**I.      BACKGROUND**

This case concerns the alleged infringement of two patents: U.S. Patent No. 6,504,515 (the "'515 Patent," Doc. 13-1) and U.S. Patent No. 7,916,684 (the "'684 Patent," Doc. 13-2) (collectively, the "Patents-in-Suit").

Harris initiated this case on April 15, 2011, and filed an Amended Complaint (Doc. 13) on May 23, 2011, wherein Harris alleges that "Ruckus has sold products and performed methods that infringe directly, by inducement and/or contributorily, one or more claims of the [Patents-in-Suit]." (*Id.* at 3, 4). Moreover, Harris alleges that "Ruckus has infringed and is still infringing one or more claims of the [Patents-in-Suit] by making, selling and using products that embody Harris'[s] patented invention." (*Id.*).

As relevant, the original Case Management and Scheduling Order (the "2011 CMSO," Doc. 28) provided for the following deadlines: (1) mandatory initial disclosures due July 29, 2011; (2) burden-of-proof expert reports due March 5, 2012; (3) rebuttal expert reports due April 6, 2012; (4) discovery deadline of May 4, 2012; and (5) all dispositive, *Daubert*, and *Markman* motions due June 1, 2012. (*Id.* at 2; *see also* Am. CMSO, Doc. 87, at 2; Second Am. CMSO, Doc. 100, at 2). In accordance with the March 2, 2012 deadline, Harris identified and served the expert report of Dr. Harry Bims ("Dr. Bims") regarding infringement of both the '515 and '684 Patents. (First Mot. Strike at 3). Similarly, Ruckus timely identified  and served the expert reports of Dr. John Thompson, Ph.D. ("Dr. Thompson") (the "2012 Thompson Invalidity Report") regarding invalidity of the '515 Patent and Dr. Xudong Wang, Ph.D. ("Dr. Wang") (the "2012 Wang Invalidity Report") regarding invalidity of the '684 Patent. (*Id.*). Subsequently, in accordance with the April 6, 2012 deadline, Harris served the rebuttal expert report of Dr. Bims (the "2012 Bims Rebuttal Validity Report") as to validity of both Patents-in-Suit. (*Id.* at 3–4). Ruckus also timely served the rebuttal report of Dr. Thompson as to non-infringement of the '515 Patent but did not serve a rebuttal report from Dr. Wang as to non-infringement of the '684 Patent. (*Id.* at 4). Harris deposed neither Dr. Thompson nor Dr. Wang. (Resp. to First Mot. Strike, Doc. 202, at 3).

After proceeding through claim construction, (*see* Doc. 121), summary judgment, (*see* Doc. 125), and *Daubert* motions, (*see* Doc. Nos. 123–24),[1] the case was stayed on February 21, 2013, pending reexamination of the '684 Patent by the United States Patent and Trademark Office ("PTO"), (*see* Feb. 21, 2013 Order, Doc. 132; *see also* Mar. 29, 2013 Order, Doc. 138, at 3 (affirming the prior decision to stay)). To date, Ruckus has requested reexamination of the '684 Patent four times. Of those requests, the most recent, filed under Control Number 90/013,324, has been granted and remains pending before the PTO. (*See* Aug. 28, 2014 Notice Pendency, Doc. 144, at 2; *Markman* Hr'g Tr., Feb. 4, 2015, Doc. 187, at 32:19–21). Also, Ruckus has twice requested reexamination of the '515 Patent, the most recent of which, filed under Control Number 90/013,289, has resulted in amendments to the '515 Patent. (*See* Aug. 28, 2014 Notice Pendency at 1–2; Telephonic Hr'g Tr., May 26, 2015, Doc. 247, at 8:15–22).

During the course of the stay, the case was transferred to the undersigned from United States District Judge Charlene E. Honeywell. (*See* Doc. 142). Thereafter, the stay was lifted. (Oct. 2, 2014 Order, Doc. 145, at 7). In doing so, this Court instructed the parties to file a new Case Management Report ("CMR"). (*Id.*). Initially, the parties failed to agree on proposed deadlines, and on November 17, 2014, the parties submitted a CMR (Doc. 165), in which each party outlined their respective proposals.  Primarily via footnote, the parties noted that Dr. Wang was purportedly no longer available for trial and that the parties disagreed about whether Ruckus could submit "an entirely new expert report by a new expert." (Nov. 17, 2014 CMR at 6 n.15; *see also id.* at 11 n.19).

---

[1] Ruckus previously filed a *Daubert* Motion to Exclude Expert Testimony of Harry Bims, Ph.D. (Doc. 72), which was denied, (*see* Doc. 124).

As a result of the impasse, the Court held a November 25, 2014 Telephonic Hearing and encouraged the parties to file an amended CMR, which included agreed-upon deadlines. (*See* Minute Entry, Doc. 168; Telephonic Conference Tr., Nov. 25, 2014, Doc. 173, at 8:2–25). Importantly, during that hearing, the Court instructed that it was "not willing to go and rehear matters that have already been determined by Judge Honeywell." (Telephonic Conference Tr., Nov. 25, 2014, at 9:2–3). The Court continued, "So if [Ruckus] w[as] to file any motions for summary judgment, et cetera, that delve into matters already resolved, I fully expect [Harris] to move to either strike or to . . . ask the Court to deny relief on those matters that have already been determined by Judge Honeywell." (*Id.* at 9:6–10). Moreover, Counsel for Ruckus represented that the purpose of any new proceeding was "not to redo" prior proceedings; rather, the sole purpose was to address issues that arose during reexamination. (*Id.* at 6:16–17; *see also id.* at 7:2–4).

Subsequently, the parties submitted the Amended CMR (Doc. 171), which includes agreed-upon dates. In pertinent part, the parties set the following deadlines:

| DEADLINE OR EVENT | STIPULATED PROPOSED DATE |
|---|---|
| Parties to exchange amended infringement/invalidity contentions as follows:<br><br>    (1) Ruckus's amended invalidity contentions to address:<br><br>        a. construction of the disputed claim term ("simultaneous/ simultaneously") of the '684 Patent; and<br><br>        b. issues raised in the reexaminations of both the '515 and '684 Patents.<br><br>    (2) Harris's infringement contentions based on the Court's January 4, 2013 Claim Construction Order (Doc. 121) and the construction of the disputed claim term ("simultaneous/simultaneously") of the '684 Patent. | **March 6, 2015** |

| Parties to exchange amended burden-of-proof expert reports to address: | **March 6, 2015** |
|---|---|
| (1) the Court's January 4, 2013 Claim Construction Order (Doc. 121) and construction of the disputed claim term ("simultaneous/ simultaneously") of the '684 Patent; <br><br> (2) issues raised in the reexaminations of both the '515 and '684 Patents; and <br><br> (3) damages based on updated sales information and new case law. | |
| Parties to exchange rebuttal expert reports to amended expert reports | **April 3, 2015** |
| Expert discovery regarding amended expert reports closes | **April 10, 2015** |

The corresponding Case Management and Scheduling Order (the "2015 CMSO," Doc. 176) adopts the agreed-upon dates.

Thereafter, the parties proceeded through limited claim construction, and in the March 2, 2015 Order on claim construction (Doc. 190), the Court further admonished that, upon lifting the prior stay, "[t]he parties were barred from re-litigating issues that could have been addressed prior to the stay; however, the parties were permitted, through claim[] construction, *Daubert* motions, and dispositive motions, to address any changes to both the '515 and '684 Patents that arose during reexamination." (*Id.* at 2 (citing 2015 CMSO; Telephonic Conference Tr., Nov. 25, 2014, at 9:1–12)). In fact, a primary reason for rejecting Ruckus's "sets of frequencies" construction was that "Ruckus's construction improperly attempts to re-litigate issues that should have been previously addressed." (*Id.* at 12 ("First and foremost, the present claim construction is limited to issues raised during reexamination, and the terms added during the reexaminations, i.e., 'simultaneous' and 'simultaneously,' are unrelated to the frequency distinction.")).

In the meantime, Ruckus served its Second Supplemental Disclosure (Doc. 193-6), which, for the first time, disclosed Dr. Acampora as Ruckus's expert, who was "expected to testify

regarding his opinions on invalidity and non-infringement with respect" to both Patents-in-Suit. (*Id.* at 1). Despite Harris's objection to the disclosure, (*see* Ex. F to First Mot. Strike, Doc. 193-7, at 12),[2] on March 6, 2015, Ruckus served the expert report of Dr. Acampora (the "2015 Acampora Invalidity Report") regarding invalidity of both Patents-in-Suit, (*see* First Mot. Strike at 6). That same day, Harris served the amended expert report of Dr. Bims (the "2015 Bims Amended Infringement Report") regarding infringement of the '684 Patent only. (Second Mot. Strike at 2). According to Harris, "[b]ecause the claims of the '515 Patent were not amended during the reexamination, Dr. Bims did not amend his opinions with respect to the '515 Patent." (*Id.*).

Subsequently, on April 3, 2015, Ruckus served the rebuttal expert report of Dr. Acampora (the "2015 Acampora Rebuttal Non-Infringement Report") regarding non-infringement of both Patents-in-Suit. (*Id.* at 2–3). Harris also served the amended rebuttal expert report of Dr. Bims regarding validity of the Patents-in-Suit. (*See* Mot. Substitute, Doc. 250, at 6). On April 10, 2015, Harris deposed Dr. Acampora. (Harris *Daubert* Motion at 5).

## II.    DISCUSSION

The primary issue before the Court is whether Dr. Acampora's testimony should be excluded. Harris contends that the disclosure of Dr. Acampora was not permitted by the 2015 CMSO and, therefore, should be excluded based on Ruckus's untimely disclosure. On the other hand, Ruckus argues that its disclosure was permitted by the 2015 CMSO and that, in the event that its disclosure was untimely, Dr. Acampora should nonetheless be permitted to testify. Harris's arguments are well-taken.

---

[2] Where, as here, an attachment contains multiple documents, pinpoint citations will refer to the electronic page number of the attachment.

Under Federal Rule of Civil Procedure 26(a)(1)(A), among other things, a party must disclose and provide to the opposing party "(i) the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses[;] . . . (ii) a copy . . . of all documents, electronically stored information, and tangible things that the disclosing party . . . may use to support its claims or defenses." Such disclosures must be made within the time set by court order. Fed. R. Civ. P. 26(a)(1)(C); *see also* M.D. Fla. R. 3.05(d). Additionally, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "[T]his disclosure must be accompanied by a *written report*—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Such disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Under Rule 16(b), district courts are required to issue scheduling orders, the content of which may include deadlines for disclosures under Rules 26(a) and (e). In that sense, a Rule 16(b) scheduling order embodies the Rule 26 deadlines.

Rule 26(e) imparts an on-going obligation to timely "supplement or correct" disclosures if the disclosing party "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1). "The right to provide supplementation under Rule 26(e)(1) 'does not cover failures of omission because the expert did an inadequate or incomplete preparation.'" *Taylor v. Dean*, No. 5:05-cv-397-Oc-10GRJ, 2007 WL 7622152, at *4 (M.D. Fla. Jan. 19, 2007) (quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306,

310 (M.D.N.C. 2002)). Such supplementation must occur within the time limits "ordered by the court." Fed. R. Civ. P. 26(e)(1).

### A.    Untimely Disclosure

The deadline for submitting burden-of-proof expert reports was March 5, 2012, and the deadline for submitting rebuttal expert reports was April 6, 2012. After this case was reopened in October 2014, the Court set deadlines for amended burden-of-proof expert reports, which were limited to Judge Honeywell's pre-stay claim construction, issues raised during reexamination, and damages based on updated sales information and new case law. (2015 CMSO at 1–2 (adopting the Amended CMR); Am. CMR at 3). In conjunction, the Court permitted the exchange of rebuttal reports to the amended burden-of-proof expert reports. (2015 CMSO at 1).

#### 1.    The 2015 CMSO

Ruckus maintains that the 2015 CMSO's reference to "amended" burden-of-proof expert reports permitted Ruckus to employ a new expert to file a new report on invalidity. That argument is misguided. The plain language of the 2015 CMSO mentions "amended" reports; it does not mention new reports, let alone new experts. Ruckus's attempt to draw a distinction between the terms "amended" and "supplemental," (*see* Resp. to First Mot. Strike at 11), is unconvincing.

Even if the plain language of the 2015 CMSO were ambiguous, the context is even more telling. Particularly, the 2015 CMSO adopted the Amended CMR, which limited amended burden-of-proof expert reports to clearly-defined, post-stay developments, the import of which focused on prior claim construction and reexamination proceedings. Those limitations do not bespeak a wholesale redraft of expert testimony; they indicate a narrow means for revision. Additionally, prior to the entry of the 2015 CMSO, the Court instructed that it was "not willing to go and rehear matters that have already been determined by Judge Honeywell." (Telephonic Conference Tr.,

Nov. 25, 2014, at 9:2–3). On the same note, the 2015 CMSO limited summary judgment to issues raised during the reexamination and pre-stay claim construction. Such a restricted approach to summary judgment signifies a restricted approach to amending the expert reports, which would have been a fundamental ingredient of summary judgment. (*See generally* Ruckus Mot. Summ. J., Doc. 64). Stated differently, the former restriction should have indicated the latter restriction; it would have been more than reasonable for Ruckus to connect the dots.

The content of the 2015 Acampora Invalidity Report is also revealing. Therein, Dr. Acampora purports to have considered the following materials in drafting the report:

> (1) the Patents-In-Suit along with their associated prosecution history and reexaminations; (2) the Court's Claim Construction rulings; (3) selected prior art; (4) Plaintiff's final infringement contentions; (5) Dr. Bims's Infringement Report dated March 5, 2012, and (6) the Rebuttal Report of Dr. Harry Bims and the Reports of Dr. Xudong Wang and Dr. John Thompson, dated April 6, 2012, March 5, 2012, and March 5, 2012, respectfully.

(Doc. 193-8, at 2). Among other issues, Dr. Acampora's attempt to rebut a rebuttal report, by considering the 2012 Bims Rebuttal Validity Report, is far amiss. The 2015 Acampora Invalidity Report is not limited to amending the 2012 Thompson Invalidity Report or the 2012 Wang Invalidity Report and is well outside the bounds of the 2015 CMSO. The use of a new expert to file, what amounts to, an entirely new expert report was not permitted by the 2015 CMSO.

In addition to the 2015 Acampora Invalidity Report, Ruckus also served the 2015 Acampora Rebuttal Non-Infringement Report, which attempts to rebut the 2015 Bims Amended Infringement Report. As an initial matter, the 2015 Acampora Rebuttal Non-Infringement Report raises two red flags. First, it offers a rebuttal as to infringement of the '684 Patent, which is an opportunity that Dr. Wang forwent in 2012. Second, it unilaterally addresses the '515 Patent, which was not substantively addressed by the 2015 Bims Amended Infringement Report. Apart

from those issues, Dr. Acampora is a wholly new expert, who filed, what amounts to, an entirely new rebuttal report; as noted before, neither were permitted by the 2015 CMSO.

In sum, despite Ruckus's unwavering contention that the disclosure of Dr. Acampora and corresponding reports complied with the 2015 CMSO, (*see* Mot. Substitute at 6–8), such disclosure and reports were not contemplated by the 2015 CMSO. Therefore, the deadlines in the 2011 CMSO control.

The 2015 Acampora Invalidity Report was filed well after the March 5, 2012 deadline, and the 2015 Acampora Rebuttal Non-Infringement Report was filed well after the April 6, 2012 deadline. Thus, the disclosure and reports violate the 2011 CMSO.

### 2. *Modification of the 2011 CMSO*

To the extent Ruckus seeks modification of the 2011 CMSO, that request will be denied. As an initial matter, Ruckus's commitment to the false notion that its use of Dr. Acampora was permitted by the 2015 CMSO has clouded its ability to fully grasp the issue. In fact, as recently as June 9, 2015, Ruckus averred that its disclosure of Dr. Acampora was permissible, (*Id.* at 11 ("Ruckus did not disobey any order.")), notwithstanding this Court's clear admonitions that "Dr. Acampora is not your expert" and "hasn't been disclosed in accordance with the rules," (Telephonic Conference Tr., May 26, 2015, Doc. 247, at 4:24–5:1). To that end, Ruckus only affords cursory attention to modifying the 2011 CMSO.

"A party seeking the extension of an already-expired scheduling order deadline must show both good cause *and* excusable neglect." *Payne v. C.R. Bard, Inc.*, No. 14-12603, 2015 WL 1435314, at *3 (11th Cir. Mar. 31, 2015) (emphasis in original) (citing Fed. R. Civ. P. 6(b)(1), 16(b)(4)). Particularly, according to Federal Rule of Civil Procedure 16(b)(4), a Rule 16(b) scheduling order "may be modified only for *good cause* and with the judge's consent." (emphasis

added). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note, 1983 amend.). Additionally, Rule 6(b)(1)(B) provides that courts may extend deadlines "on motion made after the time has expired if the party failed to act because of *excusable neglect*." (emphasis added). A determination regarding excusable neglect requires analysis of "all pertinent circumstances, including 'the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Payne*, 2015 WL 1435314, at *3 (quoting *Advanced Estimating Sys., Inc. v. Riney*, 77 F.3d 1322, 1325 (11th Cir. 1996)).

As to good cause, Ruckus has failed to show good cause to retroactively modify the 2011 CMSO. Particularly, as will be explained more fully below, (*see infra* subsection II.B), Ruckus has failed to sufficiently establish the unavailability of either Dr. Thompson or Dr. Wang, which is Ruckus's purported basis for disclosing Dr. Acampora. Even assuming that it had, Ruckus has not acted diligently in seeking modification of the 2011 CMSO. First, Ruckus knew of Dr. Thompson and Dr. Wang's alleged unavailability in October 2014. Not until after being prompted to do so, (*see* Telephonic Conference Tr., May 26, 2015, at 6:12–7:20), did Ruckus request permission to use its late-disclosed expert. Ruckus's unwary attempt to raise this issue by way of footnote in the November 17, 2014 CMR was far from a sufficient request for relief. *See* Fed. R. Civ. P. 7(b); *see also* M.D. Fla. R. 3.01(a). Ruckus's eventual request came less than two months prior to the trial term. In the meantime, rather than seek Court approval for using its late-disclosed expert, Ruckus unilaterally "*decided* that . . . it was more efficient to have one expert opine on both patents[] and . . . *decided* to retain Dr. Acampora." (Resp. to First Mot. Strike at 4 (emphasis

added)). However, that decision was not Ruckus's to make. Indeed, it seems that Ruckus has taken a significant, and rather unnecessary, risk in proceeding with Dr. Acampora without permission to do so.

Insofar as Ruckus legitimately interpreted the 2015 CMSO, as well as relevant pre-2015 CMSO proceedings, to permit the use of Dr. Acampora, that excuse is not sufficient to show diligence. Without a doubt, Ruckus should have promptly realized its mistaken interpretation following this Court's admonitions during the November 25, 2014 Telephonic Conference and in the March 2, 2014 Claim Construction Order, (*see supra* pp. 4–5), as well as Harris's consistent objections to the use of Dr. Acampora. Nevertheless, Ruckus's counsel's own assurances "not to redo" prior proceedings suggest that Ruckus was well aware that a complete redraft of its expert reports, without permission to do so, was out of bounds. Thus, Ruckus failed to diligently seek an extension of the 2011 CMSO deadline.

As to excusable neglect, Ruckus has also failed to demonstrate excusable neglect for missing the 2011 CMSO's deadlines. To begin, this case does not present a scenario where Ruckus initially missed the original 2011 CMSO deadline. Rather, Ruckus timely identified Drs. Thompson and Wang and served relevant expert reports in 2012. Three years later and on the brink of trial, Ruckus now wishes to wholly substitute those experts. Even assuming that Drs. Thompson and Wang were presently unavailable and that, as a result, Ruckus was presently situated as if it had never disclosed an expert, excusable neglect does not exist. First, as noted, the length of the delay—between learning of its experts' unavailability and moving for modification of the 2011 CMSO—was considerable in light of the present posture of this case. The result of that delay has significantly impacted the litigation by over-complicating the present proceedings and requiring the expenditure of significant resources by both the parties and the Court. The delay will continue

to impact the proceedings. Second, the reason for the delay—Ruckus's misinterpretation of the 2015 CMSO—is, as previously noted, unconvincing; every indication was that the use of Dr. Acampora was not permitted by the 2015 CMSO, and Ruckus had every opportunity to previously move for the relief it now seeks. Ruckus has been in complete control of the delay and is solely responsible. Fourth, Ruckus's good faith is at least questionable. Ruckus previously assured the Court that its goal was "not to redo" prior proceedings; yet, its conduct indicates otherwise. Moreover, Ruckus's arguments based in self-interested pragmatism—through which Ruckus continually avers that the use of Dr. Acampora will streamline the litigation and promote a meritorious resolution—proceed in ignorance of Ruckus's wrongdoing, in lieu of self-victimization.

Lastly, Ruckus adamantly argues that the prejudice to Harris is minimal. That argument is primarily based on the fact that Harris was able to depose Dr. Acampora and that the use of Dr. Acampora eliminates Ruckus's need to use a separate expert as to each of the Patents-in-Suit, thereby simplifying trial. That argument largely ignores the prejudice that Harris has already experienced. First and foremost, Harris has expended significant resources in moving to exclude Dr. Acampora. Additionally, Harris had to prepare a comprehensive rebuttal to an invalidity report, after already having done so in 2012. As to future prejudice, the effect of Ruckus's untimely disclosure is that Harris has lost the opportunity to broadly revisit its burden-of-proof expert reports; all the while, Ruckus did. Harris also lost the benefit of sufficient post-rebuttal discovery, as well as the opportunity for all-inclusive summary judgment based on those expert reports. While Harris was able to serve a rebuttal report and depose Dr. Acampora, the fact that Harris employed some level of damage control in response to Ruckus's noncompliance does little to minimize Harris's prejudice. On the other hand, Ruckus has gained an entirely new expert with entirely new

testimony, including a chance to mount a rebuttal to infringement of the '684 Patent, which is an opportunity that Ruckus previously forwent. Harris, by properly adhering to the 2015 CMSO, missed those opportunities.

In sum, Ruckus has demonstrated neither good cause to modify the 2011 CMSO nor excusable neglect for violating the 2011 CMSO.

### B.   Sanctions

By untimely identifying Dr. Acampora and by untimely serving his reports, Ruckus has effectively violated both the 2011 CMSO and Rule 26. *See Akeva*, 212 F.R.D. at 309–10 (noting that the untimely disclosure of an expert report violates both the scheduling order and the Rule 26 disclosure requirements). Rule 16(f) governs sanctions for violating scheduling orders and provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Rule 37(b)(2)(A) lists available sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from *introducing designated matters in evidence*." (emphasis added). A number of factors guide the formulation of Rule 16(f) sanctions for untimely expert disclosure: "(1) the explanation for the failure to obey the order; (2) the importance of the expert opinion; (3) the prejudice to the opposing party by allowing the disclosures; . . . (4) the availability of alternative or lesser sanctions"; (5) "the interest in expeditious resolution of litigation"; (6) "a court's need to manage its docket"; and (7) "public policy favoring disposition of cases on the merits." *Akeva*, 212 F.R.D. at 311.

In contrast, Rule 37(c)(1) governs sanctions for failing "to provide information or identify a witness as required by Rule 26(a) or (e)" and precludes a late-disclosing party from using "that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure

was *substantially justified* or is *harmless*." (emphasis added). By its language, Rule 37(c)(1) is self-executing. "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quotation omitted). "In determining whether the failure to disclose was justified or harmless, [the Eleventh Circuit] consider[s] the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)). According to the Eleventh Circuit, "the first and third factors, together, can outweigh the second." *Romero*, 552 F.3d at 1321 (citing *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004)).

Under either approach, the testimony in the 2015 Acampora Invalidity Report and the 2015 Acampora Rebuttal Non-Infringement Report will be excluded. To begin, Ruckus has failed to sufficiently explain its purported basis for violating the 2011 CMSO, i.e., Drs. Thompson and Wang's unavailability.

As to Dr. Thompson, Ruckus offers the following reasons in support of Dr. Thompson's unavailability: he would require significant preparation time based on his unfamiliarity with the events "that post-date [his] 2012 report"; and it would be difficult for him to travel from his home in the United Kingdom to Florida for trial. (Thompson Decl., Ex. C to Mot. Substitute, Doc. 250-3, ¶¶ 4–6). The first reason is a nonstarter. Ruckus has offered no reason why Dr. Thompson could not have begun reviewing the relevant material as early as November 2014, when the stay was lifted; in fact, Dr. Acampora did not become substantially involved in this case until February 2015. (*See* Acampora Dep., Ex. 2 to Harris *Daubert* Mot., Doc. 201-2, at 14:4–8). The second

reason is also without merit. The purported difficulty is that Dr. Thompson "would also be required to obtain travel authorization from the United States government" to travel to Florida, (Thompson Decl. ¶ 6); without more, that reason is inadequate.

As to Dr. Wang, Ruckus offers the following reasons in support of Dr. Wang's unavailability: he has a scheduling conflict; he relocated from the United States to China and has "medical issues with [his] back," which inhibit his ability to travel; and he further declines to participate in this case. (Wang Decl., Ex. B to Mot. Substitute, Doc. 250-2, ¶¶ 3–5). The first reason falls short; its defect is that, at the time Dr. Wang purportedly made that determination, the trial term had not even been set. The third reason, without more, is also inadequate. As to the second reason, despite this Court's repeated instructions to do so, Ruckus has failed to elaborate or provide sufficient evidence of Mr. Wang's purported medical condition. Specifically, Ruckus previously argued that Dr. Wang could not travel "from China due to medical issues with his spine." (Resp. to First Mot. Strike at 4). As a result, during the May 26, 2015 Telephonic Hearing, this Court repeatedly admonished Ruckus that it needed "to file some sort of motion . . . explain[ing] in detail why [Drs. Thompson and Wang] are now unavailable." (Telephonic Hr'g Tr., May 26, 2015, at 6:15–17). Where that was unclear, the Court further stated that Ruckus needed "to spell out in detail why your two experts . . . are unavailable and whatever arguments and case law you want to supply." (*Id.* at 7:15–17; *see also id.* 5:6–12 ("I certainly don't have enough information to make that determination at this point based on what you've disclosed."), 6:3–4 ("I don't have enough details to make an informed decision on that."), 6:8–11 ("So I don't know if that means that one of them or both of them are permanently unable to travel or unwilling to travel or meet some other definition of unavailability.")). Despite those unequivocal

instructions, Ruckus has not offered any further explanation or evidence of Dr. Wang's medical condition, and in light of those instructions, Ruckus's failure to do so is telling.

All remaining factors favor excluding Dr. Acampora. First, the importance of Dr. Acampora's testimony is not significant; Ruckus already has two experts that can opine as to invalidity and non-infringement of the Patents-in-Suit. Second, the prejudice to Harris is, as already noted, (*see supra* subsection II.A.2), considerable. Third, lesser sanctions would be less effective. That fact is evidenced by Ruckus's pattern of disregarding court orders and by the significance of this case; Ruckus has also offered no alternative sanctions. Fourth, the interest of expeditious resolution of this litigation warrants excluding Dr. Acampora; while doing so may result in a short term delay, putting a stop to Ruckus's repeated failure to comply with deadlines will favor an expeditious resolution in the long run. It is noteworthy that the underlying goal of the 2015 CMSO was to provide for expeditious, summary proceedings prior to trial. Fifth, the Court's need to manage its docket favors enforcing its scheduling orders. Lastly, the public policy in deciding cases on the merits favors tying Ruckus to its previously-disclosed experts rather than endorsing the type of gamesmanship that has been undertaken. In other words, precluding Dr. Acampora will ensure that this case is decided on its substance, not as a result of Ruckus's late disclosure and the ensuing whirlwind.

In sum, under Rule 16(f), Dr. Acampora will be excluded. Additionally, under Rule 37(c)(1), Ruckus has failed to show substantial justification or harmlessness, and therefore, Dr. Acampora's testimony must be excluded.

### III. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff Harris Corporation's ("Harris") Motion to Exclude Ruckus's Invalidity Expert Opinions of Dr. Acampora (Doc. 193) is **GRANTED** to the extent it seeks the exclusion of Dr. Acampora.

2. Harris's *Daubert* Motion to Exclude the Expert Reports of Dr. Anthony Acampora Regarding U.S. Patent No. 6,504,515 (Doc. 201) is **DENIED as moot**.

3. Harris's Motion to Exclude Ruckus's Non-Infringement Expert Opinions of Dr. Acampora (Doc. 204) is **GRANTED** to the extent it seeks the exclusion of Dr. Acampora.

4. Defendant Ruckus Wireless, Inc.'s Motion to Substitute Expert Witness (Doc. 250) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on June 24, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record